## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## EASTERN WATERLOO DIVISION

MARTY A. SHREVE,

        Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

No. C15-2005-CJW

**MEMORANDUM OPINION AND
ORDER**

_____

Plaintiff Marty A. Shreve seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Social Security disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Shreve contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that he was not disabled during the relevant period. For the reasons that follow, the Commissioner's decision is affirmed.

## I.    BACKGROUND

Shreve was born in 1962, completed his GED, and did not attend special education. AR 325. He has previously worked as a grinder chipper I, hand sander, and cleaner. AR 23-24. The Administrative Law Judge (ALJ) determined that he was not capable of performing this past work, but that there was other work which the claimant could perform, such as a marker, insert machine operator, and a photocopy machine operator. AR 24-25.

Shreve filed his application for DIB on July 29, 2010, alleging a disability onset date of January 1, 2005. AR 257, 264. He contends that he is disabled due to

degenerative disc disease, COPD, mood disorder, anxiety disorder, and adult ADHD. AR 16. Shreve's claims were denied initially and on reconsideration. AR 142-46, 153-57. He then requested a hearing before an ALJ. ALJ David G. Buell conducted a hearing on August 28, 2013 (the Hearing) (AR 34, 65), and issued a decision denying Shreve's claim on October 17, 2013. AR 10.

Shreve sought review by the Appeals Council, which denied review on December 8, 2014 (AR 1), leaving the ALJ's decision as the final decision of the Commissioner. On February 9, 2015, Shreve filed a complaint (Doc. 3) in this court seeking review of the Commissioner's decision. On March 31, 2015, with the consent of the parties (Doc. 7), the Honorable Linda R. Reade, Chief Judge, transferred this case to a United States Magistrate Judge for final disposition and entry of judgment. The parties have now briefed the issues, and the matter is fully submitted.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity.

If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see also* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *Id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the

claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## III. ALJ'S FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2006.

2. The claimant has not engaged in substantial gainful activity since January 1, 2005, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: degenerative disc disease, COPD, mood disorder, anxiety disorder and adult ADHD (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can balance, stoop, kneel, crouch, crawl and climb ramps or stairs only occasionally. However, he cannot climb ladders, ropes or scaffolds, nor have exposure to environments with concentrated exposure to heat, fumes or cold. As such, he requires an indoor job or an occupation in a motor vehicle that is heated or cooled. Furthermore, the claimant is limited to simple, routine, repetitive work with no close attention to detail or use of independent judgment. Moreover, any job he performs must not require contact with the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 5, 1962, and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 17-27.

## IV.  THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without

being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

# V. DISCUSSION

Shreve argues the ALJ's decision is flawed for four reasons:

1. The ALJ's RFC assessment is flawed as it improperly weighted the work-related limitations from treating source Dr. William C. Crowley.

2. The ALJ's RFC assessment is flawed as it improperly weighted the work-related limitations from examining source Dr. Naga Nadipuram.

3. The ALJ's RFC assessment is flawed as it is not supported by a treating or examining source.

4. The ALJ's RFC assessment failed to properly evaluate Shreve's subjective allegations.

The four arguments will be addressed separately below.

## A. RFC Determination - Applicable Standards

The claimant's RFC is "what [the claimant] can still do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a)(1). "The ALJ must determine a claimant's RFC based on all of the relevant evidence." *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004). This includes "an individual's own description of [her] limitations." *McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). The claimant's RFC "is a medical question," *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001), and must be supported by "some medical evidence." *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam). The medical evidence should address the claimant's "ability to function in the workplace." *Lewis*, 353 F.3d at 646. At Step Four, the claimant has the burden to prove his RFC and the ALJ determines the RFC based on all relevant evidence. *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

The ALJ is not required to mechanically list and reject every possible limitation. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). Furthermore, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). "[T]he ALJ may reject the conclusions of any medical expert, whether hired by a claimant or by the government, if inconsistent with the medical record as a whole." *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995). The RFC must only include those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004).

### 1. *The ALJ Properly Weighed the Opinion of Dr. Crowley*

The ALJ gave "little weight" to the questionnaires from Dr. Crowley that indicated plaintiff had no useful ability to function, was unable to meet competitive standards or was seriously limited, but not precluded, in most mental abilities (AR 21-23, 689-690, 814-815). The ALJ gave several reasons why he accorded Dr. Crowley's questionnaires no more than little weight: 1) the checkmarks on the questionnaire indicated far greater limitations than what the treatment notes indicated; 2) opinions in the form of checked off boxes or filling in a blank line do not constitute substantial evidence; 3) an opinion on the ultimate issue of disability can never be given controlling weight because that is an issue reserved solely to the ALJ; 4) the last questionnaire was completed after not having seen plaintiff in almost two years; and 5) the questionnaires are inconsistent with plaintiff's own admitted abilities and activities (AR 22-23).

The reasons the ALJ gave for assigning little weight to Dr. Crowley's opinions are in accordance with the relevant case law and Commissioner's regulations. Plaintiff's challenges to each of the ALJ's reasons essentially asks the court to reconsider the same evidence the ALJ considered and arrive at a different conclusion. *See* Plaintiff's Brief

at 14-21. This court cannot, however, reweigh the evidence, nor find reversible error merely because it would have decided the case differently. *Wildman*, 596 F.3d at 964; *McKinney*, 228 F.3d at 863; *Loving v. Dep't of Health & Human Servs.*, 16 F.3d 967, 969 (8th Cir. 1994). Substantial evidence supports the ALJ's discussion of Dr. Crowley's questionnaires.

Plaintiff argues that the fact the medical evidence did not support the opinion is due to the "cyclic nature of mental illness." *See* Plaintiff's Brief at 17-18, 20. An ALJ may properly reject a conclusory statement, however, when it is inconsistent with the physician's own treatment notes or the record as a whole. *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007); *Hacker*, 459 F.3d at 937.

The evidence in the record between July 29, 2010, the date Shreve protectively filed his SSI application, and October 17, 2013, the date of the ALJ's decision, consistently demonstrates that Shreve does not have the disabling restrictions of mental functioning expressed in the questionnaires. Plaintiff was incarcerated with the Department of Corrections (DOC) until July 2010 (AR 566). Examinations of plaintiff while he was incarcerated repeatedly indicated that he was fully oriented, he had appropriate eye contact, he had normal grooming, a neutral affect and a stable mood, and he was cooperative (AR 496, 501, 536).

Dr. Crowley reported that a mental status examination in October 2010, revealed that plaintiff had direct eye contact, he had normal thought processes and attention span, he had fair memory, judgment and insight, and his intellectual functioning was normal (AR 587). Dr. Crowley reported on October 29, 2010, that plaintiff was pleasant, alert, oriented, and cooperative (AR 582). He had good eye contact, grooming and hygiene were adequate, his speech was spontaneous, clear and logical, he had no evidence of a thought disorder, he had a low average intellectual functioning, and his memory was grossly intact (AR 582). In March 2011, plaintiff denied symptoms of depression, bipolar, mood swings, anxiety, hallucinations, delusions, anger, addiction, cognitive

problems, nor relation issues (AR 656). The mental status examination revealed normal appearance, affect, speech, thoughts, motor, orientation, intellect and development, and his Global Assessment of Functioning ("GAF") score was 61 (AR 657).[1] Dr. Crowley's mental status examination findings and GAF rating were the same after examination of plaintiff in May 2011 (AR 654-655).

In June 2011, plaintiff's attorney requested a Minnesota Multiphasic Personality Inventory ("MMPI") be performed to assess plaintiff's personality traits because the clinical evidence was insufficient for plaintiff's claim (AR 701). Plaintiff performed tests with Dr. Harding, who merely noted general characteristics of individuals with similar results (*i.e.,* use of terms "likely" and "may"), and he did not opine that plaintiff definitely had any limitations (AR 694). Contrary to plaintiff's argument, Dr. Harding's testing does not support Dr. Crowley's questionnaires. *See* Plaintiff's Brief at 19-20. *Hurd*, 621 F.3d at 738 (opinion prepared for claimant's attorney rather than in the course of treatment less credible).

In September 2011, Dr. Crowley noted that plaintiff had a normal appearance, affect, speech, thoughts, motor, orientation, intellect, and development (AR 698). In November 2011, Social Worker Matthew Chingren merely recorded plaintiff's subjective allegations that he had no social relationships, noted plaintiff's claim that he had no major difficulties with substance abuse, and plaintiff's assurance that he would continue with his medication and counseling regimen (AR 725). The social worker noted that plaintiff had shown good participation levels and that he has been "fairly stable with treatment,"

---

[1] A GAF score of 61 to 70 corresponded to only "some mild symptoms or some difficulty in social, occupational, or school functioning but general functioning pretty well, has some meaningful interpersonal relationships." *See Diagnostic and Statistical Manual of Mental Disorders*, p. 32 (4th ed. Text Revision 2000). Although a GAF score is a subjective determination that is not binding because it may not be related to a claimant's ability to work, this score clearly undermines any opinion that plaintiff has disabling mental functioning. *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005) (physician's opinion that claimant suffered extreme limitations was starkly inconsistent with finding of a GAF of 58).

although symptoms still existed (AR 725). Impairments that can be controlled by treatment or medication are not disabling. *Buckner v. Astrue*, 646 F.3d 549, 557 (8th Cir. 2011); *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010); *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007).[2]

Dr. Crowley's December 2011 mental status examination revealed plaintiff had fair grooming and hygiene, normal thought processes, no abnormal thoughts, fair judgment and insight, full orientation, adequate recent and remote memory, normal attention and concentration, normal and logical language, and an adequate fund of knowledge (AR 828). There was a significant gap until Dr. Crowley's next mental status examination in 2013.

When Social Worker Chingren saw plaintiff in June 2013, he simply reported that plaintiff had no significant issues with thought processing, orientation, motor activity, speech, behavior, and functioning (AR 826). The social worker recorded in July 2013, about one month before plaintiff's second hearing before an ALJ, that plaintiff had no hygiene problems, but was worrying and restless (AR 823-824). Plaintiff told the social worker that his attorney wanted them to complete another questionnaire (AR 824). An opinion prepared for claimant's attorney rather than in the course of treatment is less credible. *Hurd*, 621 F.3d at 738.

The ALJ's finding that Dr. Crowley's conclusory questionnaire was inconsistent with, and unsupported by, his own clinical medical findings, is supported by the record. The other medical evidence in the record further shows that the questionnaires are inconsistent with the record as a whole. For example, when plaintiff was reincarcerated in 2012, the DOC doctors opined that plaintiff did not have any physical or mental conditions that caused work, sports, housing, or transportation restrictions (AR 734). The DOC doctors noted throughout plaintiff's incarceration that he was alert and fully

---

[2] Thus, contrary to Dr. Crowley's March 2012 statement (AR 723), there are no clinical findings in the November 2011 report that support the extreme limitations in the September 2011 questionnaire.

oriented, he had normal appearance and psychomotor activity, his immediate, recent and remote memory were intact, he had normal thought processes and thought content, and his GAF score was 61-70 (AR 764, 766-767, 780-781). *Goff*, 421 F.3d at 791 (GAF of 58 undermines finding that claimant suffered extreme mental limitations). The ALJ, therefore, properly questioned the accuracy of Dr. Crowley's questionnaires as inconsistent with the record as a whole.

Plaintiff next argues that a checklist form is not "deficient *ipso facto*." *See* Plaintiff's Brief at 18. But, the ALJ did not base his decision solely on the fact it was a checklist form; it was one of several reasons the ALJ mentioned. The Eighth Circuit Court of Appeals notes that checklist form opinions are disfavored, and an ALJ may properly discount a treating physician's opinion where the limitations listed on the form stand alone and were never mentioned in treatment records nor supported by any objective testing or reasoning. *See Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007); *see also Vandenboom v. Barnhart*, 421 F.3d 745, 749 (8th Cir. 2005) (inconsistencies in the medical record as well as treating physician's failure to document objective medical evidence to support claimant's subjective complaints justified giving his opinions less weight); 20 C.F.R. § 416.927(c)(3) (lack of supportability of opinion is basis to accord it little or no weight). An ALJ need not give "any special significance" to such conclusory opinions. *See* 20 C.F.R. § 416.927(e)(1)-(3); SSR 96-5p, 1996 WL 374183, at *2.

Contrary to plaintiff's assertion that the questionnaires document the objective medical evidence Dr. Crowley relied upon, examination of the forms indicate otherwise. *See* Plaintiff's Brief at 19-20. On both questionnaires, Dr. Crowley simply listed plaintiff's subjective complaints of inattentiveness, inability to stay on task, inability to sleep, and difficulty functioning around other people (AR 687, 689 812, 814). As shown above, these do not appear as medical findings in Dr. Crowley's treatment notes. The ALJ can discount any physician's opinion that is based on plaintiff's subjective statements rather than the objective medical findings. *Renstrom v. Astrue*, 680 F.3d 1057, 1064

(8th Cir. 2012); *Finch v. Astrue*, 547 F.3d 933, 937 (8th Cir. 2008); *Kirby*, 500 F.3d at 709; *Vandenboom*, 421 F.3d at 749.

Plaintiff further asserts that the ALJ is wrong in stating that Dr. Crowley completed the 2013 questionnaire after not having seen him in almost two years because Dr. Crowley saw plaintiff on December 7, 2012, and June 12, 2013. *See* Plaintiff's Brief at 20-21. The ALJ's statement is partially inaccurate because the record shows that Dr. Crowley did "see" plaintiff on December 7, 2012. The referenced December 7, 2012, report shows that Dr. Crowley did not perform an examination (AR 786). The report simply states "Current Symptoms: None," "Response to treatment: Good," and that plaintiff simply resumed taking Prozac 20 mg per day (AR 786). The other referenced report in June 2013 is not from Dr. Crowley; the social worker saw plaintiff on that occasion (AR 826). The last examination of plaintiff by Dr. Crowley, before the July 2013 questionnaire, appears to be in December 2011 (almost two years earlier) (AR 828). Therefore, the more accurate statement by the ALJ should have been that Dr. Crowley did not examine plaintiff within almost two years prior to completing the 2013 questionnaire. Even though the ALJ was partially inaccurate in his statement, plaintiff fails to explain how this constitutes reversible error. Reversible error does not exist when a claimant has not shown any potential impact on the disposition of the case. *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000); *Shinseki v. Sanders*, 556 U.S. 396, 409-410 (2009) (claimant has burden of showing alleged error was harmful). The type and frequency of treatment is a factor an ALJ can consider in evaluating the weight to assign a physician opinion. *See* 20 C.F.R. § 416.927(c)(1-2).

The cases plaintiff references do not address the ALJ's reliance on activities when evaluating a treating physician's opinion. The *Papesh* case does not even mention activities at the page plaintiff referenced (*i.e.,* *6). *Papesh v. Colvin*, 786 F.3d. 1126,

1132-1133 (8th Cir. 2015).[3]  The *Mosley* case is irrelevant because it discusses the reliance on activities in a credibility evaluation, not when evaluating a physician's opinion. *Mosley*, 853 F. Supp. 2d at 817.  The Eighth Circuit Court of Appeals has addressed the relationship between plaintiff's activities and a physician's opinion and held, on several occasions, that the ALJ may properly consider that plaintiff's self-reported activities were inconsistent with the physician's limitations.  *Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014); *Anderson*, 696 F.3d at 794 (ALJ can rely on activities to discount any opinion, even if those activities are not performed at the substantial gainful activity (SGA) level).

### 2. *The ALJ Properly Weighed the Opinion of Dr. Nadipuram*

Dr. Nadipuram examined plaintiff on September 29, 2010 (AR 566-570).  The objective clinical findings showed plaintiff's neurological examination was essentially normal other than some restricted lumbar and hip motion (AR 566).  Dr. Nadipuram noted that plaintiff walked slowly, but he did not need assistive devices to ambulate (AR 568).  Dr. Nadipuram noted that plaintiff had good grip strength, good upper and lower extremity muscle strength, and no sensory or reflex loss (AR 569-570).  The ALJ discussed Dr. Nadipuram's report, and he correctly noted that Dr. Nadipuram was quoting plaintiff's own subjective allegations when he said plaintiff could carry up to ten pounds for about one block, stand thirty minutes, walk about two blocks, and sit for fifteen minutes before changing position (AR 20, 566).  In light of the clinical findings, there is no merit to plaintiff's assertion that Dr. Nadipuram intended this to represent his opinion of plaintiff's abilities.  The ALJ correctly noted that Dr. Nadipuram did not provide an opinion with respect to his belief of plaintiff's possible work-related

---

[3] The *Papesh* court confirmed that opinions in a checklist format limit the assessment's evidentiary value. *Papesh*, 786 F.3d at 1133.

limitations, and plaintiff now erroneously attributes his own subjective statements to the examiner as an opinion (AR 20); Plaintiff's Brief at 23.

The clinical findings of plaintiff's treating physicians and the examinations while plaintiff was incarcerated in prison also support the ALJ's decision. A DOC physical examination in December 2009 revealed that he had a full range of motion in his neck, back and extremities, his back was not tender, and he had a full 5/5 muscle strength throughout (AR 536-537). Brent E. Buhr, M.D., reported in August 2010 that plaintiff complained of back tenderness, but he had full 5/5 muscle strength, 2+ and symmetrical reflexes and normal sensation (AR 563). On September 14, 2010, just two weeks before Dr. Nadipuram's examination, Dr. Buhr noted that plaintiff was in no acute distress and his extremities had no clubbing, cyanosis, or edema (AR 562). Dr. Buhr opined that plaintiff's back pain was stable on his current medication regimen and he instructed plaintiff to cut his Flexeril medication in half (AR 563). Plaintiff may have attempted to appear more limited than he really was when he went to the consultative examination two weeks later. An ALJ can be wary that claimants attempt to present themselves in a worse light when SSA's doctors examine them. *Chamberlain v. Shalala*, 47 F.3d 1489, 1494 (8th Cir. 1995); *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) (proper for ALJ to consider claimant's motivation).

In January 2011, Dr. Buhr noted that plaintiff had run out of his pain medication and not had it refilled (AR 677). Dr. Buhr noted that although plaintiff alleged that he had no money, he had received a medication voucher from the Salvation Army to help with getting his medications (AR 677). In April 2011, Dr. Buhr noted that plaintiff admitted that he had back pain for 15 years (AR 674). Not all pain is disabling, and the fact plaintiff cannot work without experiencing some pain does not mean he is entitled to disability benefits. *See Moad v. Massanari*, 260 F.3d 887, 891 (8th Cir. 2001); *see also Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (longstanding condition not disabling); *Dodson v. Chater*, 101 F.3d 533, 534 (8th Cir. 1996); *Dixon v. Sullivan*, 905

F.2d 238, 239 (8th Cir. 1990). A magnetic resonance image (MRI) in July 2011 merely showed "mild" degenerative changes without focal neural impingement (AR 684). When plaintiff was again incarcerated, two separate DOC examinations in January and March 2012 indicated that plaintiff's only work restriction was lifting over 100 pounds (AR 732, 734). Plaintiff also admitted that pain did not affect his activity level (AR 842). Finally, an examination in June 2013 showed that plaintiff had normal range of motion and muscle strength and no joint enlargement or tenderness in any of his upper or lower extremities (AR 835). Plaintiff's head/neck, spine, ribs, and pelvis had normal alignment and mobility and no deformity (AR 835).

### 3. *Treating Source Not Necessary; Substantial Evidence Supports the ALJ's RFC*

The record in this case contains sufficient information for the ALJ to make an informed decision on the claim for disability benefits. *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985) (ALJ need only ensure the record is sufficiently developed so he can make an informed decision). Plaintiff acknowledges that the case law states that the absence of an opinion from an examining medical source does not require a remand. *See* Plaintiff's Brief at 24-25. Plaintiff also acknowledges that the record contains opinions from treating and examining doctors and therapists, which the ALJ found were inconsistent with the evidence in the record as a whole. *Id.* This is not a case where there was no medical opinion from an examining or treating doctor. This case involves the situation where the ALJ properly considered the opinions and found that they were not entitled to controlling weight (AR 22-23). The rejection of the treating physician's opinion does not trigger the duty to re-contact the physician for another opinion. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002). Such a requirement would usurp the function of an ALJ to determine the claimant's RFC based on all the evidence in the record. *See* SSR 96-5p, at *4; SSR 96-8p, 1996 WL 374184, at *2; 20 C.F.R. §

416.927(e)(2).   Thus, the present case is distinguishable from *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).

> As Courts have recently noted:

> *Nevland* compels remand in some cases in which an ALJ determines a claimant's RFC without the benefit of medical evidence from an examining source. . . .   That issue did not arise here because the ALJ had medical evidence from a treating source . . .   Thus, *Nevland* does not compel remand in this case.

*See Sneller v. Colvin*, 2014 WL 855618, No. C12-4113-MWB, at *9 (N.D.Iowa  Mar. 5, 2014) (unpublished); *see also Agan v. Astrue*, 922 F. Supp. 2d 730, 755 (N.D. Iowa 2013) (ALJ did not rely solely on non-treating doctors as RFC supported by substantial evidence, including "the medical records, observations of treating physicians and others, and an individual's own description of his limitations").

Although plaintiff also bases his argument on the decision in *Strongson v. Barnhart*, 361 F.3d 1066, 1071-1072 (8th Cir. 2004), the Eighth Circuit Court of Appeals declined to apply *Nevland* in that case.   *See* Plaintiff's Brief at 24.  The Eighth Circuit Court of Appeals held in *Strongson*:

> This duty includes the responsibility of ensuring that the record includes evidence from a treating physician, or at least an examining physician, addressing the particular impairments at issue. . . .   In this case, there is substantial psychological evidence in the record, from both treating and examining physicians.   Each of these described Strongson's functional abilities.   Accordingly, we conclude that the ALJ's failure to obtain Ms. Diamond's views does not vitiate the force of the findings he made regarding Strongson's functional abilities.

*Strongson v. Barnhart*, 361 F.3d at 1071-1072.    Thus, the decision in *Strongson* undermines plaintiff's argument because the medical reports in the present case are almost exclusively from examining doctors and therapists.

The ALJ's reference to the state agency medical experts is in accordance with the relevant law from the United States Supreme Court, Eighth Circuit Court of Appeals, and the Commissioner's Rulings, all of which hold that such opinions from state agency

medical experts can provide substantial evidence to support the ALJ's RFC finding. *Richardson v. Perales*, 402 U.S. 389, 408 (1971). *Contra* Plaintiff's Brief at 25. In addition to *Strongson*, the Eighth Circuit Court of Appeals noted after the *Nevland* decision that the ALJ can properly rely upon the opinions of non-examining sources when the ALJ otherwise reviews the record as a whole. *Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007) ("The ALJ did not err in considering the opinion of [the state agency medical consultant] along with the medical evidence as a whole."). The Eighth Circuit Court of Appeals also noted that non-examining medical expert opinions can satisfy the ALJ's need to consider at least some supporting evidence from a professional. *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004) (citing 20 C.F.R. § 416.945(c)). The Commissioner's regulations and rulings also permit the ALJ to rely upon the state agency medical experts. "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." *See* 20 C.F.R. § 416.927(f)(2); SSR 96-6p, 1996 WL 374180, at *2; *see also Jones o/b/o Morris v. Barnhart*, 315 F.3d 974, 979 (8th Cir. 2003).

The ALJ was under no requirement to obtain another opinion from plaintiff's treating and examining doctors and therapist. As shown above, the evidence presented to the ALJ was sufficient for him to make an informed decision.


### *4. Subjective Allegations*

Shreve argues the ALJ failed to properly consider his subjective allegations. He contends the ALJ discredited those allegations because he incorrectly relied on the fact that his allegations as to impairment and pain are inconsistent with objective medical evidence in the record. He further contends that if his subjective allegations had been afforded the proper weight, a finding of disability would have been mandated. The Commissioner argues that the ALJ properly analyzed Shreve' subjective allegations as to

his limitations and pain, as well as the other record evidence, including the medical evidence, which supports discounting his allegations.

### a. Applicable Standards

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Accordingly, the court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams*, 393 F.3d at 801 (8th Cir. 2005). An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Id.* "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000).

To determine a claimant's credibility, the ALJ must consider:

    (1)    the claimant's daily activities;

    (2)    the duration, intensity and frequency of pain;

    (3)    the precipitating and aggravating factors;

    (4)    the dosage, effectiveness and side effects of medication; and

    (5)    any functional restrictions.

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (quoting *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). An ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence. *Halverson v. Astrue*, 600 F.3d 922, 931-32 (8th Cir. 2010).

An ALJ is not required "'to discuss methodically each *Polaski* consideration, so long as he acknowledge[s] and examine[s] those considerations before discounting [the claimant's] subjective complaints.'" *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008)

(quoting *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000)).  If an ALJ discounts a claimant's subjective complaints, he or she is required to "detail the reasons for discrediting the testimony and set forth the inconsistencies found." *Ford v. Astrue*, 518 F.3d 979, 982 (quoting *Lewis*, 353 F.3d at 647).  When an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, the court should normally defer to the ALJ's credibility determination.  *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).  It is not the court's role to re-weigh the evidence.  *See* 42 U.S.C. § 405(g);  *see also Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) ("[I]f, after reviewing the record, [the Court] find[s] that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Commissioner's] findings, [the Court] must affirm the decision of the Commissioner.") [citations and quotations omitted].

### b.  Subjective Allegations Were Properly Discounted

Plaintiff provides four reasons why he believed the ALJ committed reversible error when evaluating his credibility.  Plaintiff asserts his subjective testimony is consistent with Dr. Crowley's questionnaires (Plaintiff's Brief at 27); the ALJ erred in stating plaintiff was non-compliant with treatment (*Id.* at 27-28); the ALJ erred in considering plaintiff's activities (*Id.* at 27-28); and the ALJ did not consider the third-party statement from plaintiff's brother (*Id.* at 28-29).  As explained above, plaintiff's challenge to the ALJ's credibility finding by relying on Dr. Crowley's questionnaire is circular in light of the fact that Dr. Crowley based the questionnaires on plaintiff's subjective statements.  Likewise, there is no merit to plaintiff's objections to the ALJ's statement that plaintiff was non-compliant with treatment.   The ALJ pointed out the numerous gaps in treatment (AR 20, 21, 22).  The ALJ also noted that Dr. Crowley stated that plaintiff had not been consistent in following through with treatment (AR 21, 581).  The ALJ further noted that plaintiff was not taking his medications, despite the fact he received vouchers from the Salvation Army to obtain medications (AR 20).  The ALJ has accurately stated the reports in the record.

Plaintiff next asserts that the ALJ erred in relying on his minimal activities; however, it is well-settled law that when evaluating credibility, the ALJ can consider plaintiff's activities, even if they do not rise to the substantial gainful activity level. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), 20 C.F.R. § 416.929 (discussing the process for evaluating symptoms), and SSR 96-7p, 1996 WL 374186 (discussing credibility). The ALJ's consideration of plaintiff's activities was only one of several factors he considered when evaluating plaintiff's credibility. In accordance with *Polaski*, the ALJ also considered plaintiff's treatment history, the medications used, and the lack of side effect complaints to treatment providers (AR 19-22). The ALJ also properly considered the medical evidence in determining that plaintiff did not prove his symptoms existed at the disabling severity level (AR 16-19). *See* 20 C.F.R. § 416.929(c)(1)-(2) (ALJ should look at the medically documented "signs" and findings to determine the intensity and persistence of the symptoms and how they actually affect the person); *Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) ("[L]ack of objective medical evidence is a factor an ALJ may consider."). The ALJ's credibility assessment complies with the relevant law as he recognized and considered the analytical framework for evaluating credibility. *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004).

The ALJ properly considered the third-party functional report from his brother. The ALJ noted the allegations from plaintiff's brother along with plaintiff's allegations (AR 20-21). The reasoning for finding both reports not fully credible are the same. Moreover, ALJs may rightfully be skeptical of the credibility of family members as witnesses because of the obvious potential for bias. *Brown v. Charter*, 87 F.3d 963, 965-66 (8th Cir. 1996).

SSR 06-03p merely requires that the ALJ consider statements from relatives, but it does not require the ALJ to set forth a detailed explanation in his decision. The ruling discusses non-medical sources and makes important distinctions. One category is non-medical sources who have had contact with the claimant in a professional capacity, such

as teachers, school counselors, and social welfare agency personnel who are not health care providers. *See* SSR 06-03p, 2006 WL 2329939, at *3-4. The other category is non-medical sources that do not have any professional relationship with the claimant, such as spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, clergy, and employers. *Id.* The ruling states that in considering evidence from friends and relatives that "*it would be appropriate* to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." *Id.* at *6 [emphasis added]. The ruling noticeably excludes these friends and relatives when stating the policy for what an adjudicator *must* include in the case record:

> [T]he case record *should* reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what he must explain in the disability determination or decision, the adjudicator generally *should explain* the weight given to the opinions from *these* "other sources".

*Id.* at *6 [emphasis added]. Thus, although the ruling requires the adjudicator's decision reflect and explain his consideration of non-acceptable medical sources and other sources that see the claimant in a professional capacity, the ruling *does not require* the adjudicator reflect and explain how he considered statements of friends and relatives. Thus, the ALJ did not violate SSR 06-03p, and properly considered the brother's subjective statements in his decision.

The ALJ had good reasons for not fully crediting plaintiff's subjective complaints, and the record supports the ALJ's reasoning. Plaintiff's criticisms of the ALJ's credibility analysis are simply attempts to have this Court usurp the function of the ALJ and reweigh the evidence for a more favorable outcome. It is well-settled that the Court may not usurp the ALJ's duty and re-weigh the evidence to arrive at its own findings. *See* SSR 96-5p; SSR 96-8p, at *2; 20 C.F.R. § 416.927(e)(2); *see also Pearsall v.*

*Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2011); *Gray v. Apfel*, 192 F.3d 799, 802 (8th Cir. 1999). An administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. *Wildman*, 596 F.3d at 964; *McKinney*, 228 F.3d at 863; *Loving*, 16 F.3d at 969. The Court should "defer heavily to the findings and conclusions of the Social Security Administration." *Hurd*, 621 F.3d at 738; *Howard*, 255 F.3d at 581. The ALJ's finding is affirmed. *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996).

In short, the ALJ provided good reasons, supported by substantial evidence in the record as a whole, for his assessment of Shreve's credibility. As such, the ALJ's credibility determination is entitled to deference.

## VI.    CONCLUSION

For the reasons set forth herein, and without minimizing the seriousness of plaintiff's impairments, the court finds that the Commissioner's determination that Shreve was not disabled is **affirmed**. Judgment shall be entered against Shreve and in favor of the Commissioner.

**IT IS SO ORDERED** this 30th day of March, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa